555 A.2d 151

**COMMONWEALTH of Pennsylvania**

v.

**Albert NEWMAN, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 24, 1988.

Filed Feb. 27, 1989.

222

Joseph S. O'Keefe, Norristown, for appellant.

Donna G. Zucker, Assistant District Attorney, Philadelphia, for Com.

Before POPOVICH, MELINSON and HESTER, JJ.

MELINSON, Judge:

This is an appeal from the Judgment of Sentence of the Court of Common Pleas of Philadelphia County in which Appellant, Albert Newman, was sentenced to imprisonment for convictions of aggravated assault,[1] possession of an instrument of crime,[2] and simple assault.[3] We affirm.

On 1 August 1986, Minnie Mae Major was parking her automobile near her home in Philadelphia, Pennsylvania. She noticed Newman lurking behind a tree in a vacant lot across the street. She knew Newman because he had lived with her recently deceased daughter, Sarah Rhodes. As Mrs. Major was about to exit from the automobile, Newman appeared at the side window, pointed a gun at her, and ordered her to get out of the vehicle. Instead of exiting from the automobile, she restarted her vehicle and sped off while Newman fired several shots at the vehicle. Newman also fired shots at Elijah Major, Mrs. Major's husband, when he appeared in the doorway of his home after hearing the gunshots. Later that evening, Newman telephoned Mrs. Major informing her that: he blamed her for the death of her daughter; he wanted to kill Mrs. Major; and, he would succeed in killing her next time.

After the shooting incident, police detectives arrived at the Major's home and showed Mrs. Major a photographic array from which she identified Newman as the gunman. Three days after the incident, Newman fled to New York. He was arrested eight months later in New York and returned to Philadelphia.

The Honorable Francis A. Biunno presided over a jury trial at which Newman was convicted of aggravated assault on Mrs. Major, simple assault on Mr. Major, and possession of an instrument of crime. Post-trial motions were filed and denied. Judge Biunno sentenced Newman to serve five (5) to ten (10) years of imprisonment for aggravated assault, one (1) to two (2) years of imprisonment, consecutive

1. 18 Pa.Cons.Stat.Ann. Section 2702.

2. 18 Pa.Cons.Stat.Ann. Section 907.

3. 18 Pa.Cons.Stat.Ann. Section 2701.

to the aggravated assault, for simple assault, and five (5) years of probation consecutive to the first two convictions for possession of an instrument of crime. This direct appeal follows.

On appeal, Newman asserts thirteen (13) issues for our consideration. We quote from his brief as follows:

1. Did the Learned Trial Court err in denying the defendant's motion to dismiss Rule 1100 and in granting the Commonwealth's Petition to Extend Rule 1100?

2. Did the Learned Trial Court err in refusing to allow the defendant's psychiatrist to testify?

3. Did the Learned Trial Court err in refusing to allow an expert witness, Professor Abrams of the University of Pennsylvania, from testifying? [sic]

4. Did the Learned Trial Court err in refusing to sever the charges of theft of a gun occurring on July 27, 1986 from the numerous assault charges averred of August 1, 1986?

5. Did the Learned Trial Court err in failing to charge the jury that the Commonwealth muyst [sic] prove beyond a reasonable doubt, that what occurred was under circumstances maifesting [sic] an extreme indifference to the value of human life?

6. Did the Learned Trial Court err in fialing [sic] to charge the jury as to the limitations of the significance of the addresses to which the detective refferred [sic]?

7. Did the Learned Trial Court err in denying the defense the right to ask prospective venireman [sic] whether or not they believed a reasonable man could believe in the religion of Voodoo?

8. Did the Learned Trial Court err in overruling the objections of the defense to the hearsay statements presented during the course of the trial?

9. Did the Learned Trial Court err in overruling the defense objections to the testimony by Dective [sic] Hughes that the defendant was arrested in another jurisdiction?

10. Did the Learned Trial Court err in refusing to appoint to the defendant new counsel prior to the commencement of trial?

11. Was Trial Counsel ineffective in failing to argue during Rule 1100 hearing that the oral amendment were annulity [sic] and that there was no prompt hearing and that the District Attorney's Petition contained only general averments?

12. Was Trial Counsel ineffective in failing to argue during the Motion to sever, that the Commonwealth had never filed a Motion to consolidate?

13. Was Trial Counsel ineffective in basing her defense upon witnesses whose testimony was inadmissible, or at least in not requesting ruling on the proper evidence prior to the start of the defense's case?

Brief for Appellant at pages 6 and 7.[4]

▮▮ Initially, Newman asserts that the trial court erred in not dismissing the case due to the Commonwealth's alleged violation of Rule 1100 of the Pennsylvania Rules of Criminal Procedure. Rule 1100 provides in pertinent part:

**Rule 1100. Prompt Trial**

... (a)(2) Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed ...

(d) In determining the period for commencement of trial, there shall be excluded therefrom:

(1) the period of time between the filing of the written complaint and the defendant's arrest; provided that the defendant could not be apprehended because his where-

**4.** We must note that Newman's brief violates the following Rules of Appellate Procedure:

Rule 2115. Order or Other Determination in Question. (omitted from brief).

Rule 2116. Statement of Questions Involved. (two pages long in brief).

Rule 2118. Summary of Argument. (omitted from brief).

Rule 2132. References in Briefs to the Record. (omitted from brief).

Rule 2173. Numbering of Pages. (omitted from brief).

abouts were unknown and could not be determined by due diligence; ...

Pa.R.Crim.P. 1100(a)(2) & (d)(1).[5] The Commonwealth has the burden of proving by a preponderance of the evidence that due diligence was employed by the Commonwealth in attempting to apprehend Newman. *Commonwealth v. Cruz*, 362 Pa.Super. 282, 524 A.2d 507 (1987); *Commonwealth v. Maxwell*, 505 Pa. 152, 477 A.2d 1309 (1984); *Commonwealth v. Mitchell*, 472 Pa. 553, 372 A.2d 826 (1977). In determining whether the police acted with due diligence, a balancing process must be employed where the court, using a common sense approach, examines the activities of the police and balances this against the interest of the accused in receiving a fair trial. *Cruz*, 362 Pa.Super. at 285, 524 A.2d 507 (citations omitted). We have held that, where the Commonwealth exercises due diligence in attempting to locate a defendant prior to arrest, the period of elapsed time between the date of the filing of the complaint and the date of the arrest is excludable pursuant to Rule 1100(d)(1). *See Commonwealth v. Bomboy*, 357 Pa.Super. 265, 515 A.2d 969 (1986); *Commonwealth v. Mansberry*, 356 Pa.Super. 413, 514 A.2d 926 (1986); *Commonwealth v. Fisher*, 334 Pa.Super. 449, 483 A.2d 537 (1984). Further, when this court is reviewing the trial court's ruling "that the Commonwealth has met its burden, we shall consider only the evidence presented by the Commonwealth and so much evidence as presented by the defense as, fairly read in the context of the record as a whole, remains uncontradicted." *Mitchell*, 472 Pa. at 564, 372 A.2d 826 (citations omitted).

■ Here, Newman alleges that the Commonwealth did not exercise due diligence in attempting to track him down and arrest him. We disagree. The criminal incident in question occurred 1 August 1986. Officer James Hughes interviewed the complainants the next day, and he showed

---

5. By order of 31 December 1987, effective immediately, our Supreme Court amended Rule 1100. The identical provisions of old Rule 1100(d)(1) are now set forth in Rule 1100(c)(1). We here apply the old rule in effect at the time of Newman's trial.

the complainants a photographic array on the third day after the incident. Hughes obtained an arrest warrant for Newman on 6 August 1986. The address on the warrant listed Newman's residence as Syracuse, New York, based upon information received by Hughes from Mrs. Major. A few days later, Hughes learned from Newman's mother that Newman had recently telephoned her from New York. Sometime before 20 August 1988, Hughes placed Newman's name through PCIC[6] and NCIC[7] and determined that Newman had absconded while on probation. Hughes maintained periodic contact with Newman's mother and father and he remained in constant contact with the Majors. A criminal history check revealed that there was an outstanding bench warrant for Newman in New York City. Police officers were provided with photographs of Newman and "wanted" posters that depicted his likeness. In November, Hughes was in contact with the Philadelphia District Attorney's Office to determine whether that office was willing to begin extradition proceedings to retrieve Newman. Finally, on 14 April 1987, Hughes received information from the New York City Police Department that Newman had been arrested there, and extradition proceedings, ultimately successful, were instituted. After a thorough review of the laudable efforts of Officer Hughes to locate and arrest Newman, we find that the Commonwealth did act with due diligence in bringing Newman to trial. Accordingly, the trial court did not abuse its discretion in excluding the pre-arrest time from the Rule 1100 run date.

■■■ Second, Newman claims that the trial court erred in prohibiting the testimony of a psychiatrist offered, at trial, to prove "that he examined the defendant [and] that the defendant believed that what he was saying was true." Notes of Testimony, 21 January 1988, page 116.[8] An offer of proof must be sufficient to alert the trial judge to the

6. Philadelphia Crime Information Center.

7. National Crime Information Center.

8. Newman incorrectly asserts in his brief that the evidence was also offered to demonstrate Newman's alleged mental illness at the time of the incident. The record is devoid of any such offer of proof.

purpose for which the evidence is being offered, and a trial court's exclusion of evidence must be evaluated on appeal by a review of the contents of the offer at the time it was made. *Commonwealth v. Gibson,* 264 Pa.Super. 548, 400 A.2d 221 (1979); *Commonwealth v. Cain,* 471 Pa. 140, 369 A.2d 1234 (1977). The party specifying the purpose for which the testimony is admissible cannot argue on appeal that the evidence was admissible for a purpose other than that offered at trial. *Gibson,* 264 Pa.Super. at 551, 400 A.2d 221; *see Commonwealth v. Gordon,* 364 Pa.Super. 521, 528 A.2d 631 (1987). Appellant is deemed to have waived any grounds, other than those offered at trial, for the admission of the evidence at trial. *See Commonwealth v. Funke,* 306 Pa.Super. 542, 452 A.2d 857 (1982).

■ Newman proffers, without citation to legal authority, two bases for the admission of the psychiatric testimony. First, he claims the evidence was admissible to demonstrate Newman's alleged mental illness, and second, he asserts that Newman acted under the belief that he was hexed. At trial, Newman offered the testimony merely to corroborate Newman's belief that he was a victim of Voodoo. Because Newman failed to offer, at trial, the psychiatric testimony for the purpose of establishing mental illness, we find that he has waived this newly formulated claim. *See Funke,* 306 Pa.Super. 542, 452 A.2d 857.

■ Further, we find that there is no merit to his second rationale for admitting the evidence. In *Commonwealth v. O'Searo,* 466 Pa. 224, 352 A.2d 30 (1976), the defendant presented a self-defense theory at his murder trial. He attempted to call as a witness a psychiatrist who would "substantiate and corroborate the defendant's contention [via defendant's own testimony] that he harbored no ill will towards the victim, that he had no intention of harming the victim, that the defendant during the scuffle became fearful of a heart attack and drew the gun in order to get the people away from him." *O'Searo,* 466 Pa. at 228, 352 A.2d 30. The trial court prohibited the psychiatrist from testifying.

Ultimately, the Pennsylvania Supreme Court affirmed O'Searo's Judgment of Sentence. The court noted that the determination of the credibility of the witness is solely within the province of the jury and held that the admission of the psychiatrist's testimony would infringe upon the jury's determination of the credibility of the witness [defendant]. *O'Searo*, 466 Pa. at 229, 352 A.2d 30 (citations omitted). The court stated, "To permit psychological testimony for this purpose would be an invitation for the trier of fact to abdicate its responsibility to ascertain the facts relying upon the questionable premise that the expert is in a better position to make such a judgment." *O'Searo*, 466 Pa. at 229, 352 A.2d 30.

Similarly, in *Commonwealth v. Battle*, 289 Pa.Super. 369, 433 A.2d 496 (1981), the defendant presented a self-defense theory at trial. The defendant offered the testimony of a psychiatrist to show that the defendant acted out of a belief that he was in danger for purposes of establishing self-defense. Once again, the trial court barred the testimony.

A panel of this court affirmed the Judgment of Sentence. As in *O'Searo* the psychological testimony was not offered to show the likelihood of Battle's behavior under a given stimulus nor to show lack of capacity to form the specific intent to kill. Rather, the testimony was offered to show that the appellant was in fact acting out of a bona fide belief that he was in imminent danger. As such the proffered testimony did nothing more than "buttress the credibility of the defendant."

*Battle*, 289 Pa.Super. at 374, 433 A.2d 496.

In the instant matter, Newman offered the evidence to buttress his assertion that he acted while under the belief that he was a victim of Voodoo. Based upon *O'Searo* and *Battle*, we find that the trial was correct in excluding the psychiatrist's testimony.

Third, Newman challenges the trial court's refusal to permit a professor to testify as to the existence of the Voodoo religion. In fact, the testimony was offered at trial "to firm up his [Newman's] belief when he says that he

believed Voodoo was on the go against him originally and through him to Sarah Rhodes." Notes of Testimony, 21 January 1988, page 117. For the reasons set forth in the discussion concerning the testimony of the psychiatrist, we find that the trial court did not abuse its discretion by refusing to allow the testimony of the professor.

■ Fourth, Newman claims that the trial court erred by failing to sever the charges of Newman's theft of the gun from Rembert Miller, from the other charges stemming from the incident with the Majors. Rule 1127 of the Pennsylvania Rules of Criminal Procedure delineates when separate informations may be joined in one trial.

A. **Standards**

(1) Offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b) the offenses charged are based on the same act or transaction....

B. **Procedure**

(1) Written notice that offenses or defendants charged in separate indictments or informations will be tried together shall be served on the defendant at or before arraignment. A copy of the notice shall be filed with the clerk of court.

(2) When notice has not been given under paragraph B(1), any party may move to consolidate for trial separate indictments or informations, which must ordinarily be included in the omnibus pretrial motion.

Pa.R.Crim.P. 1127(A)(1)(a) & (b), and 1127(B)(1) & (2).

Newman argues that the Commonwealth never made a motion to consolidate the two cases. Although Newman is correct in his assertion that the Commonwealth failed to comply with the dictates of Rule 1127(B)(2), the record

indicates written notice was filed with the clerk of court that the offenses would be tried together.

Further, Newman avers that the theft of the gun and the use of the gun against Mrs. Major are not sufficiently interrelated to warrant consolidation of the trials. The determination of whether incidents are part of a single criminal episode involves consideration of the temporal sequence of events, the relationship between the acts, and the existence of common issues of law and fact. *Commonwealth v. Flenory*, 351 Pa.Super. 27, 30–31, 504 A.2d 1341, 1342 (1986) (citations omitted). The Pennsylvania Supreme Court has stated that "where a number of charges are logically and/or temporally related and share common issues of law and fact, a single criminal episode exists, and separate trials would involve substantial duplication and waste of scarce judicial resources." *Flenory*, 351 Pa.Super. at 32, 504 A.2d 1341, *quoting Commonwealth v. Hude*, 500 Pa. 482, 494, 458 A.2d 177, 183 (1983).

On 27 July 1986, Newman stole a pistol from the residence of Rembert Miller. Five days later, Newman fired pistol shots at the Majors. The incidents are both logically and temporally related and share common issues of law and fact. The consolidation of the trials is also very instructive in showing a common scheme or design to commit the crimes against the Majors. Accordingly, we find that the trial court did not err in failing to sever the charge of theft of Miller's gun from the charges related to the incidents involving the Majors.

 Fifth, it is Newman's assertion that the trial court erred by failing to instruct the jury properly with regard to aggravated assault. Newman claims the trial court was required to charge the jury that "the Commonwealth must prove beyond a reasonable doubt the following separate element, i.e. that what occurred was under circumstances manifesting an extreme indifference to the value of human life." Brief for Appellant at page 19. Where a defendant attempts to commit aggravated assault, or where the victim does not sustain serious bodily injury, the Commonwealth

must prove that the defendant acted with the specific intent to cause serious bodily injury. *Commonwealth v. Magnelli*, 348 Pa.Super. 345, 502 A.2d 241 (1985). However, in those instances where serious bodily injury has occurred, the Commonwealth may prove that the defendant acted recklessly, rather than with specific intent. *Magnelli*, 348 Pa.Super. at 349, 502 A.2d 241 (citations omitted).

> The trial court instructed the jury, in pertinent part:
> In order to find the defendant guilty of aggravated assault, you must find that each of the elements of the crime—the following elements of the crime have been established beyond a reasonable doubt and there are two elements. One, is that the defendant attempted to cause ... serious bodily injury to Minnie Major or Elijah Major depending on what charge you are considering. In order to find that the defendant attempted to do this, you must find that he engaged in causing bodily injury to Minnie— serious bodily injury, ... Major or Elijah Major depending in what bill you are considering. That the defendant's conduct in this regard was intentional or in other words, that it was his conscious object or purpose to cause such serious bodily injury.
>
> If after considering all of the evidence you find that the Commonwealth has established each of these elements beyond a reasonable doubt, then you should find the defendant guilty of aggravated assault....

Notes of Testimony, 22 January 1988, pages 67–68.

We find that the jury instruction was proper in this case. In the absence of serious bodily injury, the Commonwealth was required to establish that Newman acted with the specific intent to cause serious bodily injury. The charge that a defendant acted under circumstances manifesting an extreme indifference to the value of human life is not appropriate in those instances, like the case at bar, where no serious bodily injury occurred. To hold otherwise would be contrary to the unambiguous language of the aggravated assault statute. *See* 18 Pa.Cons.Stat.Ann. Section

2702(a)(1) & (a)(4). Accordingly, Newman's claim is without merit.

Sixth, Newman asserts that the trial court erred in refusing to give the following jury charge:

With respect to the Detective's testimony that he went to several addresses looking for the defendant, there has been no evidence to show that the defendant ever lived at any of these addresses; therefore, the evidence that the Detective went to certain addresses is only introduce [sic] for the limited purpose of showing the polcie [sic] made efforts to serve the arrest warrant and not to prove that they were looking in the right places.

Instructions Requested by Defense at page 4. In evaluating a trial court's instructions, we must review the charge as a whole. *Commonwealth v. Klinger*, 369 Pa.Super. 526, 539–540, 535 A.2d 1060, 1066 (1988); *Commonwealth v. Ohle*, 503 Pa. 566, 470 A.2d 61 (1983). There is no requirement for the trial judge to instruct the jury pursuant to every request made to the court. *Commonwealth v. Rodriguez*, 343 Pa.Super. 486, 495 A.2d 569 (1985). We shall not reverse the trial court's refusal of a tendered point for charge unless the refusal was prejudicial to the defendant. *Commonwealth v. Potts*, 314 Pa.Super. 256, 460 A.2d 1127 (1983); *Commonwealth v. Henderson*, 249 Pa.Super. 472, 378 A.2d 393 (1977).

Here, Newman claims the refusal to give the proffered instruction was prejudicial because the jury might have inferred that the detective's testimony as to his attempts to locate Newman was indicative of Newman's flight. We have reviewed the charge to the jury, as a whole, including the portion specifically concerning flight, and we conclude that Newman was not prejudiced in any way by the refusal of the trial judge to instruct the jury on this issue. Accordingly, this issue is without merit.

Seventh, Newman alleges that the trial court erred in denying a defense request to ask prospective jury

members whether they believe a reasonable man can place credence in Voodoo.

> It must be remembered the purpose of the voir dire examination is to provide an opportunity to counsel to assess the qualifications of prospective jurors to serve. [citations omitted]. It is therefore appropriate to use such an examination to disclose fixed opinions or to expose other reasons for disqualification. [citations omitted]. Thus the inquiry must be directed at ascertaining whether the venireperson is competent and capable of rendering a fair, impartial and unbiased verdict. [citations omitted].

*Commonwealth v. Drew,* 500 Pa. 585, 588, 459 A.2d 318, 320 (1983). *See Commonwealth v. Ingber,* 516 Pa. 2, 531 A.2d 1101 (1987). Further,

> It is equally well established that voir dire is not to be used to attempt to ascertain a prospective juror's present impressions or attitudes.

> > 'It is well-settled that the examination of jurors under voir dire is solely for the purpose of securing a competent, fair, impartial and unprejudiced jury ... Neither counsel for the defendant nor for the Commonwealth should be permitted to ... ask direct or hypothetical questions designed to disclose what a juror's present impression or opinion may be or what his attitude or decision will likely be under certain facts which may be developed in the trial of the case. While considerable latitude should be permitted on a voir dire, *the inquiry should be strictly confined to disclosing qualifications of a juror and whether a juror has formed a fixed opinion or may otherwise subject to disqualifications for cause.'* *Commonwealth v. McGrew,* 375 Pa. 518, 525, 100 A.2d 467, 470 (1953) [citations omitted].

*Drew,* 500 Pa. at 589–590, 459 A.2d 318, *quoting Commonwealth v. Johnson,* 452 Pa. 130, 136, 305 A.2d 5, 7 (1973) (emphasis in original). The scope of *voir dire* rests within the sound discretion of the trial court and will not be

reversed on appeal absent a gross abuse of discretion. *Commonwealth v. Delligatti,* 371 Pa.Super. 315, 329, 538 A.2d 34, 41 (1988); *Commonwealth v. Lark,* 350 Pa.Super. 558, 565–566, 504 A.2d 1291, 1295 (1986).

The question which Newman sought to ask was clearly calculated to gain insight into the jurors' present impressions or attitudes, that is, to explore the viability of the defense which he intended to present at trial. The question was not related to whether the jurors had formed a fixed opinion as to Newman's guilt or innocence, or whether the jurors were unable to render a fair, impartial verdict. Accordingly, we do not find that the trial court committed a gross abuse of discretion in refusing Newman's proposed *voir dire* question.

Eighth, Newman contends that the trial court erred in admitting, over a defense objection, two allegedly hearsay statements into evidence. Generally, the admissibility of evidence is controlled by the discretion of the trial court, and an appellate court will not reverse the ruling of the trial court absent a clear abuse of discretion. *In the Interest of Hyduke,* 371 Pa.Super. 380, 389, 538 A.2d 66, 71 (1988).

Mrs. Major testified that she received a telephone call from her daughter requesting Mrs. Major to pick up her daughter in New York. Newman alleges that this is inadmissible hearsay evidence. We disagree. Hearsay is an out-of-court utterance offered to prove the truth of the matter asserted. *Commonwealth v. Coleman,* 458 Pa. 112, 115, 326 A.2d 387, 388 (1974). Where a person's state of mind is relevant, that person's contemporaneous statements as to his or her state of mind are admissible under the state of mind exception to the hearsay rule. *See* Packel and Poulin, *Pennsylvania Evidence,* Section 803.3 (1987). At bar, Rhodes's statement falls under the state of mind exception to the hearsay rule. The statement constitutes circumstantial evidence of Sarah Rhodes's state of mind in support of the proposition that Newman knew that Sarah was returning home because of her illness. Accordingly, the statement was admissible as evidence.

■ Moreover, Newman asserts that the trial court erred by overruling a defense objection to a portion of the testimony of Regina Resta, M.D. Doctor Resta testified that another doctor corroborated Resta's medical findings regarding the condition of Sarah Rhodes. Although this testimony of Doctor Resta was hearsay, we find that the error was not sufficiently significant to merit a new trial. "[A]n error cannot be held to be harmless unless the appellate court determines that the error could not have contributed to the verdict. Whenever there is a 'reasonable possibility' that an error 'might have contributed to the conviction,' the error is not harmless." *Commonwealth v. Davis*, 452 Pa. 171, 178, 305 A.2d 715, 719 (1973), *quoting Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 711 (1967); *see Commonwealth v. Dungan*, 372 Pa.Super. 323, 338–339, 539 A.2d 817, 824 (1988); *Commonwealth v. Story*, 476 Pa. 391, 409, 383 A.2d 155, 164 (1978).

In his brief, Newman does no more than aver, without any supporting factual evidence or citation to authority, that he was prejudiced by the admission of Doctor Resta's testimony. After a thorough review of the record, we find no prejudice suffered by Newman on this collateral issue. If anything, the evidence was useful to the defense to demonstrate that Newman's passions were inflamed by watching his girlfriend, Sarah Rhodes, deteriorate from Acquired Immune Deficiency Syndrome (AIDS). Further, this was certainly not an issue which was determinitive of guilt or innocence. Moreover, there was other, overwhelming evidence of Newman's guilt. There is no reasonable possibility that Resta's disputed testimony contributed to the conviction. Consequently, the claim is meritless.

■ Ninth, it is Newman's contention that the trial court erred by overruling a defense objection to the testimony of Detective James Hughes. Hughes testified that Newman was arrested in another jurisdiction, New York City. Newman complains that the Assistant District Attorney elicited

this information from Hughes to create the allegedly false impression that Newman was arrested as a fugitive.

The record belies Newman's protestation that the Assistant District Attorney knowingly created the allegedly false impression that Newman fled to New York. In other portions of his brief, Newman asserts that he resided in Syracuse, New York. However, he was arrested at an address in New York City. It is certainly reasonable to infer that the testimony of Hughes was probative of Newman's flight from Philadelphia since Newman was not even arrested at his alleged Syracuse residence. In light of these facts, we find no substance to the assertion that the Assistant District Attorney is guilty of prosecutorial misconduct or that the trial court abused its discretion in admitting the testimony. Accordingly, this claim is meritless.

Tenth, Newman argues that the trial court erred in refusing to appoint new counsel for Newman prior to trial. On 20 October 1987, Newman filed a *pro se* petition requesting the appointment of new counsel to represent him. The petition was neither brought to the attention of the trial court nor of the Public Defender who ably represented Newman at trial. In addition, Newman did not request new counsel when he decided to represent himself at trial. And, when he finally terminated his self-representation, he opted specifically to be represented by the Public Defender's office.

Rule 316(c) of the Pennsylvania Rules of Criminal Procedure provides, in pertinent part, that "[a] motion for change of counsel by a defendant to whom counsel has been assigned, shall not be granted except for substantial reasons." Pa.R.Crim.P. 316(c). Whether a petition for change of court-appointed counsel should be granted is within the sound discretion of the trial court. *Commonwealth v. Williams*, 514 Pa. 62, 67–68, 522 A.2d 1058, 1061 (1987); *Commonwealth v. Segers*, 460 Pa. 149, 154, 331 A.2d 462, 465 (1975). In view of Newman's failure to press his desire for new counsel at any time subsequent to the

filing of the boilerplate petition, the able representation of Newman at trial by the public defender, and the utter failure to set forth on the record or in his brief any reasons, either unsubstantial or substantial, for granting the petition, we find the trial court's refusal of Newman's request was not an abuse of discretion.

■ Eleventh, Newman avers that his trial counsel was ineffective for failing to raise certain challenges during the Rule 1100 hearing. The burden of establishing ineffectiveness of counsel rests on the Appellant. *Commonwealth v. House*, 371 Pa.Super. 23, 28, 537 A.2d 361, 363 (1988). Newman must demonstrate that the issues underlying his claims of ineffectiveness of counsel are of arguable merit, that the course chosen by prior counsel was not reasonable in light of Newman's interests, and that he suffered prejudice as a result of the ineffectiveness of his previous counsel. *House*, 371 Pa.Super. at 28, 537 A.2d 361; *see Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). We have already discussed, at length, the viability of the Rule 1100 issue, and we have concluded that the Commonwealth did establish due diligence in bringing Newman to trial. Because Newman's claim is not of arguable merit, his trial counsel was not ineffective.

■ Penultimately, Newman contends that his trial counsel was ineffective for failing to argue that the Commonwealth had never filed a motion to consolidate the charges of theft of a gun from Miller with the charges arising from the incident with the Majors. The Commonwealth was not required to file a motion to consolidate the charges pursuant to Rule 1127(B)(1) of the Pennsylvania Rules of Criminal Procedure. As noted in our discussion concerning Newman's fourth issue, the Commonwealth put Newman on notice that the charges were to be tried together; thus, the Commonwealth complied with the Rules of Criminal Procedure in providing notice to Newman. A motion to consolidate the charges was unnecessary.

■ Finally, Newman alleges that his trial counsel was ineffective for basing Newman's defense upon the testimony of the expert witnesses whose testimony was inadmissible. Newman testified, prior to the time when the expert witnesses were called by the defense, that he acted while under the influence of Voodoo. The testimony of the expert witnesses was offered purely to corroborate Newman's belief that he was a victim of Voodoo. Although the proffered testimony was inadmissible, Newman was able to present his Voodoo defense through his own testimony. Further, appellate counsel does not suggest any other alternative to the defense strategy of Newman's trial counsel. Newman testified under oath that he was a victim of Voodoo, and it was solely the province of the jury to accept or reject his testimony. *See Commonwealth v. Wienckowski*, 371 Pa.Super. 153, 537 A.2d 866 (1988); *Commonwealth v. Fahy*, 512 Pa. 298, 516 A.2d 689 (1986). Accordingly, we find Newman's last contention to be without merit.

Judgment of Sentence affirmed.