J-S19026-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GORDEN LAMOND SUBER | : | |
| | : | |
| Appellant | : | No. 2227 EDA 2017 |

Appeal from the Judgment of Sentence April 5, 2017
In the Court of Common Pleas of Montgomery County Criminal Division at
No(s): CP-46-CR-0001439-2016

BEFORE: SHOGAN, J., NICHOLS, J., and PLATT, J.[*]

MEMORANDUM BY NICHOLS, J.: **FILED MAY 15, 2018**

Appellant Gorden Lamond Suber appeals from the judgment of sentence entered after a jury trial and convictions for simple assault,[1] recklessly endangering another person (REAP),[2] harassment, and possession of a small amount of marijuana.[3] Appellant contends that the trial court erred by sustaining the Commonwealth's objection to his testimony about what the

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2701(a)(1).

[2] 18 Pa.C.S. § 2705.

[3] 18 Pa.C.S. § 2709(a)(1), and 35 P.S. § 780-113(a)(31), respectively. The trial court, and not the jury, found Appellant guilty of these two summary offenses.

victim said to him. He also challenges the weight of the evidence for all of his convictions. We affirm.

We incorporate the facts and procedural history set forth by the trial court. *See* Trial Ct. Op., 10/20/17, at 1-4. We add that at trial, the following exchange transpired during the Commonwealth's direct examination of Vilma Ubiles, the victim:

> [Commonwealth]. And what happened when you got to the motel [room with Appellant around 9:30 p.m.]?
>
> A. As soon as we got to the room, [Appellant] put a line on the table of cocaine. I then pushed the line off the table, and he immediately got violent with me, grabbed my hand, because I had the rest of his drugs in my hand. He grabbed my hand, started tussling all over the room. He's a lot bigger than me, so I was mostly on the floor. He was dragging me back and forth to try to get the drugs from my hand.
>
> Q. Now, as he was dragging you, were you saying anything to him?
>
> A. I really can't remember word for word what I was saying. Probably why this was going on. I really couldn't say exactly what words were coming out of my mouth at that point. I don't remember that.
>
> Q. Let me just ask you a different way. Were you trying to break free from him? What were you doing?
>
> A. Yeah, I was trying—well, I was asking him to let me go, of course. And I was trying to break free. We were—I was on the floor, we were tangled up somehow. He finally got his drugs out of my hand, and I was pulling on his hand. I remember biting him to try to get free. He then finally—as I said, finally got away. . . .

N.T. Trial, 1/17/17, at 73-74. We note that the victim's testimony was focused on the events that occurred shortly after she and Appellant arrived at the motel. *Id.*

The victim continued to testify on direct examination about the events that evening, including her pouring Appellant's liquor out in the bathroom, which preceded her leaving the motel room:

> [Commonwealth]. Do you remember where [Appellant] was pointing [the gun] at?
>
> A. Just at me.
>
> Q. And how long did he hold it there?
>
> A. He just asked me, am I leaving or not. And I said I'll leave. I grabbed my stuff. I grabbed my stuff and I left. Went to the lobby and that's when I used the phone to call my son, but the lady at that lobby called the police instead.

*Id.* at 80.

Following a cross and re-direct examination, Appellant's counsel elicited the following during re-cross examination of the victim:

> [Appellant's counsel]. So when you left the room, you're telling us you hadn't told [Appellant] about calling the police?
>
> A. No. He asked me, are you going to call the police or not? And I said, I don't have to, look at me. As soon as I walk downstairs, they'll call the police.

N.T. Trial, 1/18/17, at 35-36. Appellant's counsel highlighted that the victim did not testify about "look at me" during the Commonwealth's initial direct examination of her, as quoted above. *Id.* at 36.

Subsequently, Appellant testified on his own behalf about the victim's departure from the motel room:

[Appellant's counsel]. What were you doing when the liquor was being poured down the tub?

[Appellant]. I was sitting on the bed with my hands on my head, like in this position (indicating). [The victim is] yelling, she's screaming, she's mad. I just wanted her to leave. I didn't want her to trash that room, because I was responsible for it because it was in my name, I think.

Q. When did she eventually leave the room?

A. When I threatened to call the cops.

Q. Did you call the police?

A. No. I didn't want her to get in trouble. I didn't want her to lose her kids and the whole grabbing the gun thing, Protective Services would have got involved and all.

Q. As she was leaving, did she say anything else?

A. It just resonated now what she said, but—

[Commonwealth]: Objection, Your Honor, to hearsay.

[Appellant's counsel]: Your Honor, the door has been opened.

[Appellant]: No, I'm—she asked me—

The court: Hold on, sir.

[Appellant]: I'm sorry.

The court: I'm sorry, you were going to respond?

[Appellant's counsel]: I was, Your Honor. Just to the fact the door has been opened, [the victim] agreed with me, during my questioning on cross, that as she was leaving the room she said various things in court about what she was going to do and what

happened that night. I'm asking [Appellant] if he has the same recollection of those comments.

The court: I'll sustain the objection.

*Id.* at 120-21.

As set forth above, on January 18, 2017, a jury convicted Appellant of simple assault and REAP. Following a pre-sentence investigation, on April 5, 2017, the court sentenced Appellant to one to twenty-three months' imprisonment for simple assault, followed by a consecutive sentence of two years' probation for REAP.[4] Appellant filed a timely post-sentence motion challenging, among other things, the weight of the evidence. The court denied Appellant's post-sentence motion, and Appellant timely appealed.

Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) statement contending, in pertinent part:

> The trial court erroneously sustained the prosecutor's objection to [Appellant's] testimony about what the [victim] said to him during their physical confrontation. [Appellant and the victim] each accused the other of initiating and continuing the confrontation. Where the [victim] testified concerning things that Appellant allegedly said, it was clearly improper for the trial court to preclude Appellant for giving his version of what was said. As a result of the trial court's ruling, the jury was only allowed to hear one version of what the [victim and Appellant] said to each other during that struggle.

Appellant's Pa.R.A.P. 1925(b) Statement, 7/26/17, at 1-2.

_____

[4] The court imposed no penalty for Appellant's convictions for harassment and possession of marijuana.

- 5 -

The trial court filed a Rule 1925(a) opinion, asserting that Appellant's issue, as quoted above, was so overly broad and vague, he waived it. Trial Ct. Op. at 8. The court faulted Appellant for failing to identify where in the record the court made the disputed ruling. *Id.* The trial court ultimately located the testimony in question, which we quoted above, and concluded that Appellant's claim lacked merit. *Id.* at 9. The trial court explained that Appellant's counsel's reasoning—that "the door has been opened"—"failed to present the requisite legal basis for the [c]ourt to overrule the Commonwealth's hearsay objection [and] was also insufficient to preserve any claim on appeal." *Id.*

On appeal, Appellant raises the following issues in his brief:

1. Did the trial court erroneously sustain the prosecutor's objection to [Appellant's] testimony about what the complainant said to him during their physical confrontation, consequently allowing the jury to hear only one version of what the complainant and [Appellant] said to each other during their struggle?

2. Did the trial court abuse its discretion when it determined that Appellant's conviction was not contrary to the weight of the evidence, where it was manifestly unreasonable for the factfinder to base Appellant's conviction upon the contradictory and self-serving testimony of the Commonwealth witnesses?

Appellant's Brief at 9 (issues reordered to facilitate disposition).

For his first issue, Appellant contends the court erred by preventing him from testifying about what the victim said to him during the fight. *Id.* at 21. He explains that the victim, during the Commonwealth's direct examination, initially testified "she could not recall specifically what she had said." *Id.* at

- 6 -

20 (citing N.T. Trial, 11/17/17, at 73). But, according to Appellant, after the Commonwealth's follow-up question, the victim was able to testify about what each party said. *Id.* at 20-21.

Appellant argues that although the victim was permitted to testify about what he allegedly said, the court barred him "from testifying about a statement she made to him prior to leaving the room" based on hearsay. *Id.* at 21. In doing so, Appellant argues, the court improperly permitted the jury to "hear only one side of the story," particularly regarding the end of the fight. *Id.*[5] Appellant cites caselaw for the proposition that the proposed testimony was appropriate rebuttal evidence. *Id.* at 20. But Appellant cites no caselaw for the proposition that "opening the door" is a valid exception to the Commonwealth's hearsay objection, particularly when Appellant is rebutting testimony he elicited himself. *See, e.g.*, N.T. Trial, 1/18/17, at 35-36. Further, Appellant does not provide any proffer of what he would have testified to had he been permitted to answer counsel's question about the victim's statements as she was leaving the room.

Our standard of review regarding admissibility of evidence is well-settled:

---

[5] Because the trial court identified the source of Appellant's evidentiary argument and addressed it in its Rule 1925(a) decision, we decline to find waiver based on a vague Rule 1925(b) statement. We acknowledge and appreciate the trial court's efforts to identify Appellant's issue.

Questions regarding the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion. An abuse of discretion is not merely an error of judgment; rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record.

*Commonwealth v. Trinidad*, 96 A.3d 1031, 1036 (Pa. Super. 2014) (citations and quotation marks omitted).

Briefly, "'[h]earsay' means a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). Pennsylvania Rule of Evidence 103(a) provides that a "party may claim error in a ruling to admit or exclude evidence only . . . if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." Pa.R.E. 103(a).

In *Commonwealth v. Newman*, 555 A.2d 151 (Pa. Super. 1989), this Court explained that the party making an offer of proof waives any grounds other than those actually presented for the trial court's consideration:

An offer of proof must be sufficient to alert the trial judge to the purpose for which the evidence is being offered, and a trial court's exclusion of evidence must be evaluated on appeal by a review of the contents of the offer at the time it was made. The party specifying the purpose for which the testimony is admissible cannot argue on appeal that the evidence was admissible for a purpose other than that offered at trial. Appellant is deemed to have waived any grounds, other than those offered at trial, for the admission of the evidence at trial.

*Id.* at 156 (citations omitted).[6]  In ***Commonwealth v. Fisher***, 681 A.2d 130 (Pa. 1996),[7] the Pennsylvania Supreme Court held that a failure to make an offer of proof results in waiver, because if an appellate court does not "know the substance of [the] statements, [it] cannot determine if the lower court erred in excluding the disputed testimony." *Id.* at 143 (citation omitted).

Here, Appellant failed to make an offer of proof as to what he would have testified to had he been permitted to respond.  Initially, Appellant was asked if the victim said anything else as she was leaving the motel room.  N.T. Trial, 1/18/17, at 120.  Rather than present an offer of proof and an explanation that Appellant's proposed response would not be hearsay or would fall within a hearsay exception, Appellant construed the question of "did she say anything else?" as an inquiry into whether he had the same recollection of the victim's comments.  *Id.* at 121.  Without knowing the substance of Appellant's anticipated response, we cannot ascertain whether the trial court correctly sustained the Commonwealth's hearsay objection.  ***See Fisher***, 681

_____

[6] We may rely on caselaw predating the enactment of the Pennsylvania Rules of Evidence to the extent the caselaw does not contradict the rules. ***Commonwealth v. Aikens***, 990 A.2d 1181, 1185 n.2 (Pa. Super. 2010).

[7] According to the Pennsylvania Supreme Court in ***Commonwealth v. Tedford***, 960 A.2d 1 (Pa. 2008), the law in effect at the time of the ***Fisher*** decision precluded victim-impact testimony in a capital case—a holding that was superseded by a statutory amendment.  ***Tedford***, 960 A.2d at 40 n.28.

A.2d at 143; **Newman**, 555 A.2d at 156.[8] In any event, we add that Appellant himself "opened the door" by questioning the victim about what she said shortly before she left that evening. **See, e.g.**, N.T. Trial, 1/18/17, at 35-36. Thus, because Appellant failed to make an appropriate offer of proof, we cannot discern whether the trial court abused its discretion, and we therefore affirm. **See Trinidad**, 96 A.3d at 1036.

In support of his second issue, Appellant contends that the Commonwealth's evidence was not credible for three reasons. First, he maintains that the evidence does not support the victim's assertion that their argument started when he used cocaine. Appellant's Brief at 16. Appellant notes he is subject to randomized drug tests at his job and the police never recovered cocaine from the motel room. **Id.** He claims he had insufficient time to hide the cocaine before the police arrived given that the police, upon searching his person, found marijuana. **Id.** at 16-17.

Second, Appellant asserts that the victim's testimony about her seizure, **see** Trial Ct. Op. at 2, supports his version of events. Specifically, that the

---

[8] We acknowledge that counsel's question does not necessarily call for a hearsay response, but Appellant—instead of responding yes or no—seemingly began to expound on what the victim asked him before the court stopped him. N.T. Trial, 1/18/17, at 120-21. Indeed, Appellant's counsel subsequently clarified that he wanted to know if Appellant recalled the victim's comments. **Id.** at 121. Regardless, Appellant has not articulated how the contents of his unpreserved response would have established reversible error by the trial court.

victim became enraged after learning of his infidelity, began physically assaulting him, and, as a result, suffered a seizure. Appellant's Brief at 17-18. In other words, the victim—not Appellant—started the fight. *Id.* at 18.

Third, Appellant maintains that the photographic evidence of the motel room does not "depict a room in which a violent struggle" occurred. *Id.* at 18-19. Appellant concludes by arguing that his testimony contained less contradictions than the victim's testimony, and given his lack of a criminal history and cooperation with the police, the convictions were against the weight of the evidence. *Id.* at 19.

The standard of review for a challenge to the weight of the evidence is well-settled:

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the fact-finder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the factfinder's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. . . .
>
> [A] new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial court is to determine that notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice. A motion for a new trial on the grounds that the verdict is contrary to the

- 11 -

weight of the evidence concedes that there is sufficient evidence to sustain the verdict; thus the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.

***Commonwealth v. Landis***, 89 A.3d 694, 699 (Pa. Super. 2014) (citations and original brackets omitted).

After careful consideration of the parties' briefs, the record, and the decision by the Honorable Thomas C. Branca, we discern no abuse of discretion. ***See*** Trial Ct. Op. at 6-7 (summarizing conflicting testimony and concluding jury found the testimony of the victim and police more credible than Appellant's testimony). We decline to reweigh the testimony and evidence presented at trial, and hold the trial court did not abuse its discretion by concluding that the verdict was not so contrary to the evidence as to shock the court's conscience. ***See Landis***, 89 A.3d at 699.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/15/18

# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    :      NO. 1439-16

                            :      2227 EDA 2017

            v.                :

                            :

GORDON SUBER                 :

## OPINION

**Branca, J.**                                              **October 20, 2017**

## I.    INTRODUCTION

Gordon Suber ("Defendant") appeals to the Superior Court from this Court's judgment of

sentence imposed on April 5, 2017, by virtue of the jury's verdict of Guilty rendered on January

18, 2017, and denial of his Post-Sentence Motion on June 16, 2017. For the reasons that follow,

Defendant's appeal is without merit.

## II.    STATEMENT OF THE CASE

### A.    Factual History

On the evening of February 6, 2016, Defendant and Ms. Ubiles met at the train station, as

the two had agreed to do earlier that day, and took a cab to the Motel 6 to discuss the status of

their relationship.[1] By way of background, the two had been friends for nearly twenty years, and

had been romantically involved for the previous two years until weeks earlier when, according to

Ms. Ubiles, she caught Defendant in a car doing cocaine with another woman.

After arriving at the Motel 6, at approximately 9:30pm, the two went to Room 327,

previously reserved by Defendant, and soon became embroiled in an argument which ultimately

culminated in Defendant's assault of Ms. Ubiles. At trial, she recounted the assault as follows:

---

[1] The Motel 6 is located at 815 West DeKalb Pike, in Montgomery County.

1



Ms. Ubiles: As soon as we got to the room, he put a line [of cocaine] on the table. I then pushed the line off the table, and he immediately got violent with me, grabbed my hand, because I had the rest of his drugs in my hand. He grabbed my hand, started tussling all over the room. He's a lot bigger than me, so I was mostly on the floor. He was dragging me back and forth to try to get the drugs from my hand.

Commonwealth: Now, as he was dragging you, were you saying anything to him?

Ms. Ubiles: I really can't remember word for word what I was saying. Probably why this was going on. I really couldn't say exactly what words were coming out of my mouth at the point. I don't remember that.

Commonwealth: Let me ask you a different way. Were you trying to break free from him? What were you doing?

Ms. Ubiles: Yeah, I was trying -- well, I was asking him to let me go, of course. And I was trying to break free. We were -- I was on the floor, we were tangled up somehow. He finally got his drugs out of my hand, and I was pulling on his hand. I remember biting him to try to get free. He then finally - - as I said, finally got away. And as he was pulling away, he faced [sic] me with his foot, because I was on the floor and I was trying to hold his foot.

[N.T. 1/17/17, at 73-74].

Ms. Ubiles testified further that she and Defendant continued arguing over Defendant's cheating, until he pushed Ms. Ubiles up against the wall and she hit her head on the wall-mounted tv, at which time she was overcome by dizziness and collapsed in a seizure. When she recovered, Ms. Ubiles and Defendant continued arguing. Eventually, Defendant hit Ms. Ubiles in the face causing her to collapse again. Ms. Ubiles claimed Defendant then drew his gun, (for which he had a license to carry,) pointed it at her, and ordered her to leave. Once Ms. Ubiles got out of the room she went to the lobby and called her son, while motel staff contacted the police to report the assault.[2]

Patrol Officer Brian Manion and Corporal Drew Miller of the Upper Merion Township Police Department testified that they responded separately, but within minutes, of the underlying

---

[2] [N.T. 1/17/17, at 69-102, Exs. C-1 , C-2].

2

10:21pm call for a domestic dispute at the Motel 6. Upon arrival, the officers encountered Ms. Ubiles, who was standing out front of the Motel 6, crying. The right side of her face was swollen. She immediately relayed to them what had transpired and directed them to Room 327 to investigate. After apprehending Defendant, the officers retrieved his loaded Glock 30, .45 caliber semiautomatic handgun, from its holster on Defendant's right side without incident. While searching Defendant's person for knives he admitted possessing, Officer Miller located a clear bag containing marijuana in Defendant's front left pocket, along with black folding knives in each of his front pockets. During their investigation the officers also located one of Ms. Ubiles's acrylic fingernails, which Ms. Ubiles testified had been torn off during her altercation with Defendant, as well as a piece of one of her earrings on the floor of the bathroom in Room 327.[3] And while both officers observed injuries to Ms. Ubiles's face, which they photographed within an hour of the assault as part of their investigation, each denied seeing any injuries or evidence of defensive injuries on Defendant (to corroborate his allegation that Ms. Ubiles tried to grab his gun and he fended her off in self-defense).[4]

In addition to testimony of the victim and officers, the Commonwealth introduced and the Court admitted photographs reflecting bruising and scratches on Ms. Ubiles's arms, legs and hands, as well as a black eye suffered in the assault. Ms. Ubiles not only provided a statement at the police station the night of the assault, but less than two days later, on February 8, 2016, at 7:18am, Ms. Ubiles sought medical attention and received treatment for the underlying assault at Einstein Medical Center in Montgomery County.[5] As demonstrated below, the Emergency Department Triage Note further corroborated Ms. Ubiles's claim that Defendant assaulted her:

---

[3] [N.T. 1/17/17, at 73-75, Ex. C-20 (photo of fingernail)].
[4] [N.T. 1/17/17, at 18, 86, 92, 96, 98, Exs. C-1, C-2 (photographs, medical records, hospital discharge papers)].
[5] [N.T. 1/17/17, at 90].

3

Arrives to ED with c/o ex-boyfriend allegedly assaulted her Saturday. States she was kicked, head slammed into wall and was punched. C/o head pain temporal area, nausea, left-sided neck pain . . . .[6]

## B.    Procedural History

Ultimately, the Commonwealth charged Defendant with the following on Bill of Information 1439-2016: Count One—Terroristic Threats[7]; Count Two—Simple Assault[8]; Count Three—Simple Assault[9]; Count Four— Recklessly Endangering Another Person ("REAP")[10]; Count Five— Possession of Small Amount of Marijuana;[11] and Count Six— Harrassment/Strike, Shove, Kick, Etc.[12] The case proceeded to two-day jury trial before the undersigned, resulting in the jury's verdict finding Defendant guilty on Count Two—Simple Assault, Count Four— REAP, Count Five— Possession of Small Amount of Marijuana; and Count Six— Harrassment/Strike, and not guilty on the remaining two counts. On April 5, 2017, the undersigned sentenced Defendant to undergo imprisonment for not less than one (1) month, nor more than twenty-three (23) months on Count Two, followed by two (2) years of probation on Count Four to run consecutive to Defendant's parole on Count Two.[13]

On April 17, 2017, Defendant filed a Post-Sentence Motion, which the Court subsequently denied after argument by Order dated June 16, 2017.[14] On July 13, 2017, Defendant filed a timely Notice of Appeal from his judgment of sentence and the Court's denial

---

[6] [N.T. 1/17/17, at 99-100, Ex. C-1 ("Medical Records")].

[7] 18 Pa. C.S. § 2706(a)(1).

[8] 18 Pa. C.S. § 2701(a)(1).

[9] 18 Pa. C.S. § 2701(a)(3).

[10] 18 Pa. C.S. § 2705.

[11] 35 Pa. C.S. § 780-113(a)(31); [N.T. 4/5/17, at 3; N.T. 1/17/17, at 22]. The Commonwealth amended the original bills on January 17, 2017, to charge Count Five as above-described.

[12] 18 Pa. C.S. § 27909(a)(1).

[13] [N.T. 4/5/17, at 15-16]. The Court imposed no further penalty on Counts Five and Six.

[14] [Def.'s Application for Parole, 6/15/17]. Defendant's Application for Parole was granted on June 15, 2017, and his release was ordered for June 16, 2017.

4

of his Post-Sentence Motion. On July 26, 2017, in response to the Court's directive, and pursuant to Pa. R.A.P. 1925(b), Defendant filed a timely Statement of Matters Complained on Appeal ("1925(b) Statement,") as delineated below.

## III. ISSUES PRESENTED

Defendant's 1925(b) Statement sets forth the following issues for review:

1.) The trial court abused its discretion when it determined that Appellant's conviction was not contrary to the weight of the evidence, where it was manifestly unreasonable for the factfinder to base Appellant's conviction upon the contradictory and self-serving testimony of the Commonwealth witnesses.

2.) The trial court erroneously sustained the prosecutor's objection to the Defendant's testimony about what the complainant said to him during their physical confrontation. The defendant and the complainant each accused the other of initiating and continuing the confrontation. Where the complainant testified concerning things that Appellant allegedly said, it was clearly improper for the trial court to preclude Appellant for [*sic*] giving his version of what was said. As a result of the trial court's ruling, the jury was only allowed to hear one version of what the complainant and the Defendant said to each other during that struggle.

[Def.'s 1925(b) Statement, (7/26/17)].

## IV. DISCUSSION

The standard of review applied to claims raised on appeal is limited to determining whether the trial court abused its discretion or committed an error of law. *See Commonwealth v. West*, 937 A.2d 516, 521 (Pa. Super. Ct. 2007); Pa. R. Crim. P. 720. In evaluating a trial court's decision, an "abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Commonwealth v. Greer*, 951 A.2d 346, 355 (Pa. 2008) (internal quotation omitted).

A.    **The Court Properly Determined That The Weight of The Evidence Supported Defendant's Convictions.**

5

On appeal, Defendant preserved two issues at most, both of which are meritless. First, Defendant's weight of the evidence claim, preserved by virtue of his Post-Sentence Motion, affords no relief as the jury's verdict in this case was wholly appropriate in light of the ample, credible evidence put forth by the Commonwealth.[15]

An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Dupre,* 866 A.2d 1089, 1101 (Pa. Super. Ct. 2005) (internal citations omitted). To grant a new trial on the basis that the verdict is against the weight of the evidence, the evidence must be "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Sullivan,* 820 A.2d 795, 806 (internal citation omitted). Finally, it is well-settled that an appellate court cannot substitute its judgment for that of the trier of fact, which is free to believe all, none, or part of the testimony presented at trial, including the testimony put forth by the Commonwealth. *See Commonwealth v. Holley,* 945 A.2d 241, 246 (Pa. Super. Ct. 2008); *see also, Commonwealth v. Griscavage,* 517 A.2d 1256 (Pa. 1986).

In this case, the Commonwealth presented credible evidence upon which the jury ultimately determined Defendant was guilty of Count Two—Simple Assault, Count Four— REAP, Count Five— Possession of Small Amount of Marijuana; and Count Six— Harrassment/Strike. More specifically, the victim testified that Defendant attacked her and then, despite her pleas for him to let her go, he wrestled her violently to the ground and threw her against the wall where she struck her head on a wall-mounted tv. Even after Defendant's assault triggered Ms. Ubiles's seizure disorder, which Defendant admits witnessing, he continued his assault of her, ultimately striking her in the face, and drawing and pointing his gun at her. The evidence further established that Defendant was larger than Ms. Ubiles and therefore, capable of overpowering her physically; especially in light of Ms. Ubiles's numerous

---

[15] *See* Pa. R. Crim. P. 607(A)(3).

6

underlying medical conditions including MS (multiple sclerosis,) lupus, and her seizure disorder.[16] Both Officers Manion and Miller testified credibly not only as to the injuries they observed about Ms. Ubiles's face and hands supporting her rendition of the evening's events, but also as to the lack of any injuries on Defendant and the marijuana they located on Defendant's person while conducting their investigation. As such, the record here belies Defendant's bald characterization of the Commonwealth's witnesses as contradictory and self-serving, and the evidence was more than sufficient to support the jury finding Defendant guilty of Count Two—Simple Assault, Count Four— REAP, Count Five—Possession of Small Amount of Marijuana; and Count Six— Harrassment/Strike.

While Defendant contends he proffered credible evidence to establish that he was merely defending himself from Ms. Ubiles's attack, the jury obviously rejected his claim and acted well within its province in weighing the evidence of both parties and concluding that Defendant had assaulted Ms. Ubiles. *See Holley*, 945 A.2d at 246 (Jury free to believe all, none, or part of testimony presented.) Any inconsistencies as alleged by Defendant in Ms. Ubiles's recollection of the manner in which the assault unfolded and continued are easily attributed to the physically and emotionally traumatizing nature of the assault— a finding well within their prerogative as fact finders. Given the jury's acquittal of Defendant on Count One—Terroristic Threats[17] and Count Three—Simple Assault[18] the record reflects their thorough analysis and diligent weighing of all of the testimony presented to them. Certainly the verdict does not shock the conscience of the Court.

---

[16] Ms. Ubiles testified that she is 5'7" and 189 lbs; and that Defendant is "about six feet tall," and 250-260 lbs. [N.T. 1/17/17, at 82].

[17] 18 Pa. C.S. § 2706(a)(1).

[18] 18 Pa. C.S. § 2701(a)(3).

7

In light of the ample, credible evidence supporting Defendant's guilt, the Court's denial of Defendant's Post-Sentence Motion on this ground was proper.

## B. The Court Properly Sustained The Commonwealth's Objection.

Next, Defendant asserts that the Court erred in sustaining "the prosecutor's objection to the Defendant's testimony about what the complainant said to him during their physical confrontation," thus precluding him from "giving his version of what was said."[19] This assertion is overly broad and vague, and Defendant has failed to direct the Court to the location in the record of the specific evidentiary ruling at issue. Thus, in the first instance, Defendant's second claim on appeal is waived.[20]

Moreover, Defendant's concomitant articulated basis for his second claim of error— that the Court's ruling effectively precluded him from presenting his version of events—in no way clarifies his issue on appeal. Defendant's assertion is simply not borne out by the record. To the contrary, the entirety of Defendant's testimony focused on his version of events. Furthermore, his assertion that the Court's ruling precluded him from testifying as to 'things' Ms. Ubiles said is also contradicted by the record. More specifically, during defense counsel's direct examination of his client, Defendant referenced 'what' Ms. Ubiles said on more than ten (10) occasions.[21] Given the numerous instances in which Defendant referenced Ms. Ubiles's statements, along with Defendant's complete failure to identify where in the record the objectionable preclusive ruling occurred, this Court's ability to analyze Defendant's second contention of error is further constrained.

---

[19] [*See* Def.'s 1925(b) Statement, at ¶ 2, (7/26/17]. (Emphasis added).
[20] *See* Pa. R.A.P. 1925(b)(4)(ii) (Statements to vague too decipher are waived.)
[21] [N.T. 1/18/17, at 106, 109-10, 112-14, 117, 119-20].

8

And while this Court need not and should not be obligated to do so, it nonetheless reviewed the entire record in an attempt to locate and decipher Defendant's precise claim on appeal. The record contains only two instances in which the Court sustained Commonwealth's objections during Defendant's direct examination. Only the following exchange not as to what Ms. Ubiles said _during_ the confrontation but as she _fled_ the room might be construed to fall within the ambit of Defendant's vague claim.

Defense Counsel: As she was leaving, did she say anything else?

Defendant: It just resonated now what she said, but –

The Commonwealth: Objection, Your Honor, to hearsay.

Defense Counsel: Your Honor, the door has been opened.

Defendant: No, I'm – she asked me –

The Court: Hold on, sir.

Defendant: I'm sorry.

The Court: I'm sorry, you were going to respond?

Defense Counsel: I was, Your Honor. Just to the fact the door has been opened, Ms. Ubiles agreed with me, during my questioning on cross, that as she was leaving the room she said various things in court about what she was going to do and what happened that night. I'm asking Mr. Suber if he has the same recollection of those comments.

The Court: I'll sustain the objection.[22]

Defense counsel's articulated response, that 'the door' had already been opened, not only failed to present the requisite legal basis for the Court to overrule the Commonwealth's hearsay objection, but was also insufficient to preserve any claim on appeal. _See_ Pa. R.E. 103(a).[23] Here,

---

[22] [N.T. 1/17/17, at 120- ].

[23] _See_ Pa. R.E. 103(a)(2) ("A party may claim error in a ruling to admit or exclude evidence only: . . . (2) if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.")

9

rather than positing an applicable hearsay exception, or developing or requesting leave to make an offer of proof as to what testimony he intended to elicit from Defendant, and whether or not that testimony was being offered for the truth of the matter or for some admissible purpose, defense counsel incorrectly claimed that the door had been opened by Ms. Ubiles during his re-cross examination of her presumably during the following exchange:

Defense Counsel:   Ma'am, you just suggested that Gorden [*sic*] was alone in the room for 20 to 25 minute before the police were called; right? That's just what you got finished saying to the jury; right?

Ms. Ubiles:   No, I didn't say before the police were called. I said before the police got up there to his room.

Defense Counsel:   That's right. Because what you're telling this jury really happened was that you just left the room with no intention of calling the police; right?

Ms. Ubiles:   I didn't. I called my son.

Defense Counsel:   So when you left the room, you're telling us you hadn't told Gorden [*sic*] about call the police?

Ms. Ubiles:   No. He asked me, are you going to call the police or not? And I said, I don't have to, look at me. As soon as I walk downstairs, they'll call the police.

Defense Counsel:   Well, that a new detail you didn't include on your direct examination –

Ms. Ubiles:   You didn't ask me.

Defense Counsel:   So now you're adding this new detail –

Ms. Ubiles:   Now you asked me.

Defense Counsel:   -- before your left the room.

Ms. Ubiles:   Now you asked me and now I tell you. You did not ask me.

Defense Counsel:   Well, ma'am, now is not the time for argument back and forth. Now is the time for me to ask questions and you to give me answers; right?

10

Ms. Ubiles:    I gave you the answer.

Defense Counsel:    You're telling me now that the last thing you said before leaving the room was, I'm not going to ask to call the police, Gorden [*sic*,] just look at me; right?

Ms. Ubiles:    Just look at me.

[N.T. 1/18/17, at 35-36] (emphasis added).

The rationale permitting a party to introduce otherwise inadmissible evidence "because the door has been opened" is based on fairness and premised on the concept that the opponent by introduction of certain evidence implicitly waived any objection to otherwise inadmissible responsive evidence. Such a rationale is not supported in this case as the above-referenced exchange to which Defendant was seeking to respond was introduced by defense counsel. It was Defendant who "opened the door." *See e.g.* Pa. R.E. 607 (A party cannot open the door through which it seeks to enter.); *see also, Commonwealth v. Hood*, 872 A.2d 175, 185 (Pa. Super. Ct. 2005) (Party may impeach opposition's credibility where opposition opened the door.). Thus, having failed to adequately develop and preserve his evidentiary claim, Defendant's second claim on appeal is waived. Challenges to the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. *See Commonwealth v. Young*, 989 A.2d 920, 924 (Pa. Super. Ct. 2010). Here, defense counsel when asked by the Court, failed to articulate either the evidence sought to be admitted, and a basis upon which the Court could make an analysis as to admissibility. As such, the Court acted well within its discretion in sustaining the Commonwealth's objection.

11

## V.   CONCLUSION

Accordingly, the trial court requests that the judgment of sentence imposed on Defendant,

Gordon Suber on April 5, 2017, be AFFIRMED.

BY THE COURT:

THOMAS C. BRANCA,                    J.

Copies of the above Opinion
Mailed on:  10-20-17
**By Interoffice Mail:**
Paul M. George, Esq.— Montgomery County Public Defender's Office
Montgomery County District Attorney - Appellate Division
Deputy Court Administrator-Criminal

Secretary

12