452 A.2d 857

COMMONWEALTH of Pennsylvania

v.

Stuart Walter FUNKE, Jr., Appellant.

Superior Court of Pennsylvania.

Argued March 6, 1980.

Filed Nov. 19, 1982.

Petition for Allowance of Appeal Denied July 8, 1983.

J. Christian Ness, York, for appellant.

Peter J. Mangan, Assistant District Attorney, York, for the Commonwealth, appellee.

Before CERCONE, President Judge, and WATKINS and MONTGOMERY, JJ.

WATKINS, Judge:

This is an appeal from the conviction and sentence of the Court of Common Pleas of York County by the defendant-appellant, Stuart Walter Funke, Jr. He was convicted by a jury of the manufacture of amphetamines. Post-trial motions were denied by the trial court, and appellant was sentenced to a term of imprisonment of not less than two and one-half nor more than five (2½–5) years.

The facts as set forth in the opinion of the court below are as follows: Shortly after Christmas, 1977, the defendant moved into real estate in the City of York which he and his wife owned and which was previously occupied by his wife and child. There was a retail establishment on the first floor of the premises. Defendant and his family occupied an apartment on the second and third floors. The defendant owned a great deal of laboratory equipment, had studied chemistry and had practical experience in the field as it was a significant part of his job at American Machine Foundry. On January 3, 1978, two boxes from a chemical supply house were delivered to a Mr. Senft. These had been ordered by a Mr. Boring, who requested that Mr. Senft receive them. When notified that the boxes had arrived, Boring picked them up and delivered them to the premises occupied by the defendant. Later that day, Pennsylvania State Police Officers who had the premises under surveillance examined two boxes apparently set out in front of the defendant's premises for refuse collection. There were several empty bottles in these boxes which contained residue of formaldehyde, formic acid, and phenyl-2-propane. The last was identified by an expert witness as a chemical essential to the illicit manufacture of amphetamines. The other chemicals were identified as ones that could be and frequently were used in such production. A search warrant was obtained and executed on January 6, 1978. The police found a great quantity of laboratory equipment in a room on the third floor. This

equipment included a large number of items which contained residue of amphetamines. An expert witness called by the Commonwealth testified that the equipment that had been seized included all of the equipment required to manufacture amphetamines and he further testified that he had made amphetamines by a process that used said equipment, the chemicals found on the premises, and the chemicals in the containers found in the trash.

Appellant's first contention in this appeal is that the search warrant was invalid, in that there was insufficient information from which the issuing authority could assess the credibility of the informants, there was a failure to set forth the underlying circumstances necessary to judge the validity of the informants' information, and there was no probable cause to justify issuance of this search warrant at the time of its issuance.

There is a two-pronged test which must be met before a magistrate can issue a search warrant based primarily on information supplied by informants. First, the affidavit must set forth the underlying circumstances from which the informant drew his conclusion. Second, the affidavit must contain some of the underlying circumstances from which the officer concluded that the informant was credible or his information reliable. *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964).

The appellant contends that the *Aguilar* test was not met with respect to the three informants involved here. It is true that the affidavit does not set forth adequate information from which one could ascertain that the informant's were credible or their information reliable. However, one does not have to rely solely on the information supplied by the informants in order to find that there was probable cause to believe that appellant was operating a clandestine laboratory. The affidavit consists of sixteen paragraphs, the majority of which relate the personal observations of the affiant and other police officers resulting from an extensive investigation and the surveillance of appellant's premises.

One must take into consideration the affidavit as a whole, which consists of: (1) information supplied by informants; (2) information which supports the conclusion that appellant is a chemist; (3) observations of police officers that certain chemicals were delivered to appellant's premises by one George Boring; and (4) the fact that bottles containing chemicals essential to the manufacture of amphetamines were found in front of appellant's premises. Clearly, all of this taken together is sufficient for a finding of probable cause. Therefore, the search warrant was valid.

■ The second issue raised on appeal is whether the lower court erred in failing to remove from the courtroom a large quantity of materials which were never used as exhibits at trial. Appellant cites several cases in which the presence of certain materials within the jury's view was held to be prejudicial since they were unrelated to the crimes with which the defendants were charged. See *State v. Bowman,* 8 Wash.App. 61, 504 P.2d 1148 (1972); *Adler v. State,* 248 Ind. 193, 225 N.E.2d 171 (1967); *U.S. v. Kwitek,* 433 F.2d 18, later appealed, 467 F.2d 1222 (1972). This case is distinguishable. The materials seized from appellant's premises consisted of textbooks, magazines, and laboratory equipment. This all supported the fact that appellant is an experienced chemist who performed experiments in his home. Since he was charged with manufacture of amphetamines, these materials were clearly related to the crime charged. This is not comparable to the situation in *Adler v. State,* supra, in which the crime charged was robbery and a picture of the deceased victim was posted in front of the jury, giving rise to the implication that the defendants were responsible for his death. Counsel for appellant has been unable to show what materials were prejudicial to appellant. Since the materials were all related, however, incidentally to the crime charged, and since there has been no allegation of which materials were prejudicial, the lower court did not err. This is particularly true in light of the fact that the Commonwealth intended to have all the materials admitted into evidence at some time during the trial. The court had no

way of knowing at the time of the objection that a large portion of the material would never be admitted.

■ A third issue raised by the appellant is whether the lower court erred in failing to instruct the jury to limit its deliberations to that period of time for which the defendant was charged. The information charged manufacture of amphetamine on or about January 6, 1978, the date of the search of appellant's property. Prior to the trial the Commonwealth indicated an intent to prove that the offense occurred between January 3, 1978 and January 6, 1978. In its charge to the jury, the court instructed that the jury could consider activities of appellant from Christmas, 1977 to January 6, 1978, in deciding whether or not the Commonwealth had proved appellant's guilt beyond a reasonable doubt. Counsel for appellant now contends that this instruction was error since it changed the time frame originally agreed upon. He says that if he had known that such would be the case, he would have made different tactical decisions.

The law is clear that such an instruction is proper. It is provided in Pa.R. *Crim.Pro. 213(a)(3)* that an indictment or information must contain:

"the date when the offense is alleged to have been committed if the precise date is known, and the day of the week if it is an essential element of the offense charged, provided that if the precise date is not known or if the offense is a continuing one, an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient."

The "on or about" language was employed in the information charging appellant.

In *Commonwealth v. Rouse,* 207 Pa. Superior Ct. 418, 218 A.2d 100 (1966), it was written that "in the prosecution of . . . crimes in which a particular date or day of the week is not the essence of the offense, the Commonwealth's burden is to prove the commission of the crime upon some date fixed with reasonable certainty and within the prescribed statutory period." The court upheld the conviction of the

defendant since the trial judge found that "On several occasions during the period from approximately the first week in November to the second week in December, and on or about the New Year" the defendant had committed the acts for which he was charged. In *Commonwealth v. Morrison*, 180 Pa. Superior Ct. 121, 118 A.2d 258 (1955), it was held that "the jury [can] properly consider and convict upon any evidence that show[s] commission of the crime or crimes charged within [the statutory period]."

The offense in this case is a continuing one. The information properly charged appellant with manufacture of amphetamine "On or about January 6, 1978." Counsel for the appellant had asked the court during the trial to limit testimony to events which occurred on January 6, 1978. The Commonwealth indicated that the testimony elicited would probably concern events which occurred between January 3, 1978, and January 6, 1978. During the course of the trial, however, there was testimony concerning events prior to that time. Therefore, the lower court's instruction to consider evidence between Christmas, 1977, and January 6, 1978, was not error as that period was within the Statute of Limitations.

■ Another issue raised on appeal is whether the lower court erred in failing to grant a mistrial when a police officer called by the Commonwealth as a witness commented in the presence of the jury on appellant's calling his attorney at the time of the search. Before trial, counsel for appellant sought to preclude any reference to this fact, contending that it would suggest to the jury that appellant was guilty. The court agreed that the fact was not relevant and told the District Attorney to tell his witnesses to make no reference to it. One of the police officers, however, did make such reference. The District Attorney stated that he had forgotten to relay this instruction to the witness. The explanation was accepted and the motion for mistrial was denied.

Appellant analogizes this to cases in which it was held that it is error to allow evidence of a defendant's assertion of his constitutional right to remain silent. The reason

behind these holding is that "most lay persons would view an assertion of the constitutional privilege as an admission of guilt." *Commonwealth v. Greco,* 465 Pa. 400, 350 A.2d 826 (1976). Appellant cites no authority to support his contention that a mistrial should be called if reference is made to an attorney's presence during a search. We agree with the lower court that appellant was not prejudiced by the statement. In all likelihood, the average lay person would probably not conclude that one who calls his attorney upon being confronted by a dozen police officers with a search warrant is admitting his guilt by his actions.

The fifth issue raised by the appellant is whether the lower court erred in its instruction to the jury on the definition of the term "manufacture." Section 2 of the Controlled Substance Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, as amended, 35 P.S. Sec. 780–102, defines the term "manufacture" as "the production, preparation, propagation, compounding, conversion or processing of a controlled substance..." None of the elements of the definition are defined in the Act. In its instructions to the jury, the lower court gave the standard dictionary meaning of "processing". Appellant contends that this was error, since, by elaborating on one element of the definition, it unduly emphasized that element.

One of the duties of a trial judge is "to clarify the issues so that the jury may comprehend the questions they are to decide and not only to state to the jury correct principles of law applicable to the pending case and to endeavor to make such principles understandable in plain language..." *Commonwealth v. Zeger,* 200 Pa. Superior Ct. 92, 186 A.2d 922 (1962). Appellant contends that all the words of the definition are self-explanatory. The trial judge obviously did not agree. By defining the word "processing" in the common dictionary sense he was only clarifying the definition for the jury. That was not error.

In his next contention, the appellant claims that the court below erred when it refused to permit the appellant's

attorney to ask defense witnesses on re-direct examination whether they had testified truthfully during their direct testimony. This occurred after the Commonwealth, upon cross-examination, had established a relationship between the defense witness and the appellant tending to taint the credibility of the defense witness. The appellant's attorney asked the witness: Q. Do you understand that you are under oath to tell the truth in this proceeding? A. Right. Q. Are you telling the truth? This question was objected to and the court properly sustained the objection as the issue as to the truthfulness of witnesses' testimony is a jury question.

■ Appellant's seventh contention is that the evidence was insufficient to sustain the verdict that the jury rendered against him. Under the circumstances of this record, this question is totally without merit. If the Commonwealth is entitled to the benefit of all favorable evidence and reasonable inferences therefrom, then the evidence in this case was more than adequate to support the verdict. See *Commonwealth v. Burton,* 450 Pa. 532, 301 A.2d 599 (1973).

■ Appellant's next contention deals with the admission of certain exhibits by the Commonwealth which were photographs of boxes and labels, a signature form, and an order form. These exhibits tended to show that certain chemicals had been purchased by the appellant from a chemical company and that he had received them. These exhibits were admitted as circumstantial evidence in order to show that the chemicals were used in the manufacture of illegal substances. They were properly admitted.

■ Appellant's ninth argument is that the lower court erred in refusing to permit the appellant's attorney to inquire and argue before the jury the status of certain criminal charges against a third person (James Diehl) which arose out of the same series of events. A review of the cross examination of Trooper J.R. Lokhaiser establishes that the defense counsel did indeed inquire into the charges against Diehl in some detail. Diehl did not testify at appellant's

trial. After the cross examination of Lokhaiser, the District Attorney requested that he be permitted to ask the witness the exact nature of charges pending against Diehl. The court refused this request and stated that it would have to sustain any objection to defense counsel's questioning of the status regarding Diehl had the Commonwealth voiced an objection. Appellant now argues that he was precluded from showing that Diehl, rather than appellant, committed the offenses because the court precluded him from arguing the status of the charges against Diehl to the jury. However, the appellant desired the information regarding Diehl in order to impeach Diehl in the events should he take the witness stand and not to shift the blame to Diehl. Appellant counsel did not inform the court of the purpose that it now avers at the time of the trial. When trial counsel proposes to introduce evidence for one purpose then he is deemed to have waived any other purpose that he does not present at the time of the proposal but thinks about later after the trial has ended.

The court did permit appellant to argues concerning the missing witness. No error was committed here.

Appellant's tenth contention is that the lower court erred in refusing to instruct the jury that an expert is qualified to give an opinion based on his expertise, without having direct knowledge about which he is testifying. The chemist who testified for the Commonwealth had manufactured amphetamines from the same chemicals as those found in and around appellant's property using the same equipment as that found at appellant's premises. The chemist who testified for appellant had never manufactured amphetamines. He testified on the basis of what he had learned in books. Appellant requested an instruction to the jury that his expert's opinion could be considered although he lacked practical experience in the manufacture of amphetamines.

The court explained the value of expert testimony by saying that "An expert is permitted to give explanations and draw inferences not within the range of ordinary knowledge, intelligence and experience and to give an opinion and

state his reason for it." The court went on to say that "you are not bound by the testimony of either expert, much like direct and circumstantial evidence, until the last analysis. It is your judgment of what you found persuasive that counts." It is clear in the instruction that an expert's testimony is to be considered even though what he says may be an opinion. If the court had given the requested instruction, it might have had the effect of implying that the defense expert's testimony was to be given more weight than the Commonwealth's expert. It is not the duty of the court to determine the credibility of witnesses in a jury trial. This is a matter for the jury's determination and no error was committed by the lower court on this question.

The next question raised by the appellant is that the lower court erred in permitting appellant's expert to testify to his fees for researching and preparing for trial. A jury may consider the interest of a witness in assessing the witness's credibility. See *Commonwealth v. Dolny,* 235 Pa. Superior Ct. 241, 342 A.2d 399 (1975).

The final argument of the appellant is whether the sentence imposed by the court is so manifestly excessive as to inflict too severe a punishment. The court sentenced the appellant on December 26, 1978 to a term of imprisonment of not less than two and one-half nor more than five years and a fine of $15,000. The maximum sentences for this crime was five years and maximum fine of $15,000. Thus, the sentence did not exceed the statutory limits. A review of the record discloses the seriousness of the appellant's activities in the manufacture, on a large scale, of illegal substances. The evidence at trial indicated that 60,000 to 60,440 dosage units of amphetamine could be manufactured with the fruits of the search of appellant's premises. This was only a small portion of the total amphetamine manufactured by him. The appellant's activities in the manufacturing of such a pernicious substance was an extremely serious

matter involving great harm to society. Under these circumstances, the sentences were justified.

Judgment of sentence affirmed.